IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RON HADDAD JUNIOR, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 06 C 0506 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| DOMINICAN UNIVERSITY and SALLIE MAE SERVICING, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff Ron Haddad Junior ("Haddad" or "Plaintiff") brings suit against Dominican University ("Dominican") and Sallie Mae, Inc. ("Sallie Mae" and, together with Dominican, "Defendants") for violations of the Higher Education Act, 20 U.S.C. § 1001 *et seq.* Defendants move for summary judgment on all grounds. Because Plaintiff cannot demonstrate that he was falsely certified or that he exhausted his administrative remedies, Defendants' Motions for Summary Judgment are granted.

Facts

Plaintiff attended university at Dominican from 1998-1999. Haddad Jr. Dep. at 7. To fund his education at Dominican, Haddad executed three separate student loan applications entitled Application and Promissory Note for Federal Stafford Loan. Def. Ex. 1-3. The loans were made by TCF Bank and purchased by Sallie Mae, a secondary market purchaser that provides liquidity to the federal loan program. Sallie Mae Stmt. at 4.

Haddad personally signed all three applications, but testified that he did not read the loan applications before he signed them. Although each application contained the phrase "THIS IS A

LOAN THAT MUST BE REPAID" in bold letters above the signature line, Haddad testified at his deposition that he did not understand he would be liable for repayment. Def. Ex. 1-3; Haddad Jr. Dep. at 46. Instead, Haddad thought his father was paying for his education because his father told him he "would take care of [the loan]," filled out parts of all three applications, and had already paid for Haddad's previous education at another local college. Haddad Jr. Dep. at 44-46, 87.

Haddad claims that neither Dominican nor Sallie Mae evaluated his financial ability to receive and repay student loans. Haddad met with Bob Morsivillo, a representative of Dominican who interviews prospective students, who asked Haddad how he would pay for his education at Dominican. Haddad Sr. Dep. at 22-23. Haddad answered that his father or family would pay. There was no further inquiry by Dominican. Sallie Mae also made no other inquiry into Haddad's financial status.

After withdrawing from Dominican in 1999, Haddad owed $4,478.73 to Dominican and $5,250.00 to Sallie Mae. Dominican Mem. at 16; Donnelly Dep. at 2. In August 2002, Dominican obtained a default judgment against Haddad in the Circuit Court of Cook County and recovered the amount owed to it. Between 2000 and 2005, Haddad's loans were in deferment and forbearance. Haddad Jr. Dep. at 80-81. After the deferment and forbearance periods ended in October 2005, Sallie Mae contacted Haddad numerous times requesting payment, but Haddad failed to pay. Donnelly Dep. at 4.

In October 2006, after the commencement of this suit, Sallie Mae submitted the defaulted loans to the Illinois Student Assistance Commission (ISAC) for payment under the contractual guarantee. Donnelly Dep. at 4. On October 24, 2006, Sallie Mae received a default payment of $5,802 from ISAC for the three loans. *Id.*

Plaintiff brought this action *pro se* against Defendants Dominican and Sallie Mae alleging that both Defendants engaged in deceptive practices by inducing him to execute student loans and failing to evaluate his eligibility to receive those loans. Haddad also alleges that Defendants were not forthcoming about the obligation Haddad assumed to repay loans to Sallie Mae at the time he signed for them, notwithstanding his father's oral promise to fund his education at Dominican. Haddad's original Complaint alleged violations of federal mail and wire fraud, as well as deceptive debt collection practices and negligence by Defendants. Defendants moved to dismiss all claims. After reviewing Plaintiff's allegations, this Court limited Plaintiff's potential recovery to claims brought under the Higher Education Act, 20 U.S.C. § 1001 *et seq*. Defendants now move for summary judgment. As part of their motion, Defendants served the *pro se* Plaintiff with notice of the filing of summary judgment, including instructions concerning Plaintiff's Local Rule 56.1(b) response to Defendants' statements of fact.

Standard of Review

Rule 56(c) states that a motion for summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate where there is no genuine issue as to any material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). This Court views evidence and draws all reasonable inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill, Inc.,* 209 F.3d 687, 692 (7th Cir. 2000). When considering a motion for summary judgment, this Court draws all reasonable inferences in favor of the party against whom the motion being considered is made. *Allen v. City of*

3

*Chi.,* 351 F.3d 306, 311 (7th Cir. 2003). Once a moving party has demonstrated that summary judgment is appropriate, the opposing party must do more than "simply show that there is some metaphysical doubt as to material facts" to defeat the motion. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). A "mere scintilla of evidence" is insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252.

Local Rule 56.1 requires that statements of facts accompanying summary judgment motions contain allegations of material fact that are supported by admissible record evidence. A party's *pro se* status does not excuse his failure to comply with the requirements of this rule. *See Stevens v. Navistar Int'l Transp. Group*, 244 F. Supp. 906, 910 (N.D. Ill. 2002); *see also Greer v. Bd. of Educ. of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001). Simply denying well-supported factual assertions of the moving party "is unacceptable in the context of summary judgment, where a litigant already has had the opportunity to complete discovery and to develop and assemble appropriate evidence (if any exists) to present a triable case." *Oranika v. City of Chicago*, 2007 WL 54068 (N.D. Ill. Jan. 3, 2007). In the absence of genuinely disputed facts stated in the Local Rule 56.1 statements of fact and supported by evidence in the record, it is appropriate to grant summary judgment against the non-movant. *See Koszola v. Board of Educ. of City of Chicago,* 385 F.3d 1104, 1108 (7th Cir. 2004).

## Discussion

### *Exhaustion of Administrative Remedies*

Haddad's claims under the Higher Education Act are barred as a matter of law because it is undisputed that Haddad failed to exhaust the administrative remedies provided to him under the Act.

*See, e.g., Armstrong v. Accrediting Council for Continuing Education and Training, Inc.*, 980 F. Supp. 43 (D.D.C. 1997), *aff'd* 168 F.3d 1362 (no private action to enforce 20 U.S.C. § 1087 without proof that the private citizen first availed herself of administrative remedies); *Green v. U.S.*, 163 F. Supp. 2d 593 (W.D.N.C. 2000) (borrower cannot proceed for refund of government loans without first using the administrative process provided in the Higher Education Act); *American Ass'n of Cosmetology Sch. v. Riley*, 170 F.3d 1250, 1255) (9th Cir. 1999) (holding that school's lawsuit cannot go forward because it failed to exhaust administrative remedies). 34 C.F.R. § 682.402(e) outlines the administrative method by which a borrower may file a claim for a false certification of student loans. A borrower seeking discharge of a federal student loan must submit a written request and a sworn statement to the holder of the loan. The holder of the loan forwards the request to a guaranty agency that decides whether the request for discharge should be granted. 34 C.F.R. § 682.402(e)(3), (e)(7). If the agency denies the request for discharge, a borrower may appeal directly to the Secretary. *See* 34 C.F.R. § 682.402(e)(7)(iii)(B)(2). There is no evidence in the record that Haddad took any of these required actions regarding his false certification claims prior to filing this suit.

*Requirements for eligibility to receive federal student loans.*

Even if Haddad had presented any evidence that he exhausted his administrative remedies, Haddad's claim that Defendants violated the Higher Education Act would fail on the merits. Under the Federal Family Education Loan (FFEL) program which governs Stafford Loans, private lenders make loans to "eligible borrowers" to attend eligible postsecondary schools.[1] *See* 20 U.S.C. § 1071.

---

[1] Haddad does not have a valid claim under 20 U.S.C. §§ 1087d and 1087cc-1. Section 1087d applies to the Direct Student Loan Program, and sets forth requirements for a school to participate in that program. 20 U.S.C. §§ 1087d. Section 1087cc-1 applies to Perkins Loans, which are low interest loans made to students in need. The only loans raised Haddad's Amended Complaint are federal Stafford loans, governed by 20 U.S.C. § 1071-87.

Where a school falsely certifies a student's eligibility for an FFEL loan, the Higher Education Act authorizes the Secretary of Education to discharge the student's debt. 20 U.S.C. § 1087(c) states in relevant part:

> If a borrower who received . . . a loan made, insured, or guaranteed under this part and . . . if such student's eligibility to borrow under this part was falsely certified by the eligible institution . . . then the Secretary shall discharge the borrower's liability on the loan (including interest and collection fees) by repaying the amount owed on the loan . . .

20 U.S.C. § 1087(c). Haddad alleges that he was not properly "screened" by Defendants for his fitness to borrow educational loans, implying either that Defendants should have caught the fact that he did not meet the requirements for eligibility, or that Dominican falsely certified him as eligible to borrow funds from Sallie Mae. There is no genuine issue of material fact that Haddad was both eligible for federal Stafford loans and that Dominican did not "falsely certify" Haddad as that term is defined by the Higher Education Act.

Title 20 U.S.C. § 1091 governs student eligibility to obtain federal loans. In order to be eligible, a student must be: (1) accepted or enrolled in an institution of higher education; (2) if enrolled, be making satisfactory progress towards a degree; (3) not be in default on any other loans made pursuant to the Higher Education Act; and (4) be a citizen of the United States. 20 U.S.C. § 1091(a)(1),(2),(3),(5). In addition, the student must be carrying a minimum of half a full-time work load "in a course of study necessary for enrollment in a program leading to a degree." 20 U.S.C. § 1091(b)(3). Haddad successfully met each of the above requirements. While Haddad argues that Defendants should have looked at his prior job history and assets to determine his eligibility to receive the loans, the statute does not impose any requirement on an institution of higher education or a loan company to inquire into a student's financial status or ability to repay a loan. *See* 20 U.S.C.

§ 1091. Thus, nothing in the statute suggests that Haddad was not eligible for federal Stafford loans at the time he signed the applications.

Dominican did not falsely certify Haddad as that term is term is defined by the Higher Education Act. The regulations promulgated by the Department of Education limit the instances in which false certification may result in discharge of the loan. A discharge based upon false certification of an eligible student is limited to two instances: (1) when a school certifies that a student had the ability to benefit from the education and he did not; and (2) when a school fraudulently signs a borrower's name on the loan application. 34 C.F.R. § 682.402(e)(1)(I). A borrower qualifies for the discharge if he or she lacked a high school diploma or GED certificate at the time of enrollment. 34 C.F.R. § 682.402(e)(3)(ii)(B). Neither of these are at issue here. Haddad is a high school graduate, and it is undisputed that Haddad personally signed the promissory notes. Haddad Jr. Dep. at 6, 45-46.

*Fraud claims against Ron Haddad, Sr.*

Finally, Haddad asserts throughout his filings that his father in some way fraudulently obtained the loans in Haddad's name. Haddad apparently bases his position upon statements from his father that Haddad should sign the promissory notes and that his father "would take care of it." Haddad Jr. Dep. at 44-46, 87. Haddad's father is not a party to this suit and thus this court cannot adjudicate claims against him as part of this action. As stated above, Haddad signed the promissory notes himself, which were labeled clearly as loan documents, and Haddad does not allege that either Defendants or his father forced him to sign the documents. Additionally, as discussed above, an individual who believes a loan was inappropriately obtained may seek to have the loan discharged by following the procedures outlined in 34 C.F.R. § 682.402, regardless of any involvement of a

7

family member. Haddad did not pursue this administrative relief. Thus, the involvement of Haddad's father in any of the alleged actions forming the basis of this suit does not create a triable issue of fact that would preclude summary judgment.

*Claims against Dominican*

In addition to the statutory and exhaustion bases for summary judgment in favor of both Defendants, Dominican has stated additional unrefuted grounds meriting summary judgment in Dominican's favor. Haddad's claims against Dominican are independently barred by the doctrine of *res judicata*. "The three requirements for *res judicata* under federal law are: (1) an identity of the parties or their privies; (2) an identity of the causes of actions; and (3) a final judgment on the merits." *Cent. States, S.E. & S.W. Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 628 (7th Cir. 2002).

Dominican obtained a default and final judgment on the merits against Haddad with regard to some of his federal loans in Illinois State Court on August 2, 2002. *See Dominican University v. Ronald Haddad Jr.*, Court No. 02 M1 130006. A court has the power to "take judicial notice of 'proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue.'" *United States v. Hope,* 906 F.2d 254, 260 n.1 (7th Cir. 1990) (citations omitted); *see also Henson v. CSC Credit Svcs.,* 29 F.3d 280, 284 (7th Cir. 1994) (confirming that court documents from state proceeding are noticeable). In the Illinois State Court case, Dominican sued Haddad over his failure to pay the same loans as have been raised in this suit, incurred at Dominican during the same period at issue in this suit. The state court entered a final judgment against Haddad finding him in default and requiring repayment to Dominican. Haddad did not raise any claims related to the Higher Education Act as part of that suit

although he had an opportunity to do so. His failure to do so precludes his ability to raise those claims here.

## Conclusion

Because Plaintiff has not raised any genuine issue of material fact that would preclude summary judgment on his claims under the Higher Education Act, 20 U.S.C. § 1071 *et seq.*, and because Plaintiff's claims against Defendant Dominican are barred by the doctrine of *res judicata*, Defendants' Motions for Summary Judgment are granted.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: March 15, 2007